```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
STEPHEN BAUMGART, M.D., JOSEPH D.
DECRISTOFARO, M.D., MICHAEL A.
FRIEDMAN, M.D., ALAN R. SPITZER, M.D.,
SHANTY SRIDHAR, M.D., RITA P. VERMA,
M.D., and THOMAS E. WISWELL, M.D.,

                    Plaintiffs,                    MEMORANDUM & ORDER
                                                   03-CV-5526 (DRH) (WDW)
         v.

STONY BROOK CHILDREN'S SERVICE, P.C.,
STONY BROOK CLINICAL PRACTICE
MANAGEMENT PLAN, STATE UNIVERSITY
OF NEW YORK AT STONY BROOK SCHOOL
OF MEDICINE, STATE UNIVERSITY OF NEW
YORK, UNITED UNIVERSITY PROFESSIONS,
STONY BROOK CLINICAL PRACTICE
MANAGEMENT PLAN GOVERNING BOARD,
RICHARD N. FINE, M.D., NORMAN EDELMAN,
M.D., and MICHAEL A. POREMBSKI,

                    Defendants.
----------------------------------------------------------------------X
```

**A P P E A R A N C E S :**

**THOMPSON, WIDGOR & GILLY LLP**
Attorneys for Plaintiffs
350 Fifth Avenue, Suite 5720
New York, New York 10118
By:  Douglas H. Widgor, Esq., Kenneth P. Thompson, Esq., Scott Browning Gilly, Esq.

**ELIOT SPITZER, ATTORNEY GENERAL OF THE STATE OF NEW YORK**
300 Motor Parkway, Suite 205
Hauppauge, New York, 11788
By: Susan M. Connolly, Esq.

**JAMES R. SANDER, ESQ.**
Attorneys for Defendant United University Professions
52 Broadway, Ninth Floor
New York, New York 10004
By:  Katherine A. Levine, Esq.

**GARFUNKEL WILD & TRAVIS, P.C.**
Attorneys for Defendants Stony Brook Clinical Practice Management Plan, Clinical Practice Management Plan Governing Board and Stony Brook Children's Services, P.C.
111 Great Neck Road
Great Neck, New York 11021
By: Leonard M. Rosenberg, Esq., Jordan M. Freundlich, Esq.

**HURLEY, District Judge:**

*INTRODUCTION*

The above-captioned Plaintiffs are physicians who are employed as professors at the State University of New York at Stony Brook's Medical School pursuant to a collective bargaining agreement; they also maintain a separate clinical practice. According to the Complaint, the Defendants colluded to unlawfully limit Plaintiffs' maximum allowable, and actual, clinical income. The Plaintiffs have brought the present claim, styled as a "hybrid action" under Section 301 of the federal Labor Management Relations Act ("LMRA"), against their union for breach of the duty of fair representation, and against the remaining Defendants for breach of a collective bargaining agreement. The Plaintiffs also assert pendant state law causes of action against the Defendants for breach of contract, fraud, civil conspiracy, and violations of New York labor law.

The Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the LMRA does not confer federal jurisdiction over Plaintiffs' claims and that supplemental jurisdiction over Plaintiffs' state law claims is unwarranted. The Defendants have alternatively moved to dismiss pursuant to Rule 12(b)(6), on the basis of various other arguments. For the reasons that follow, the Court agrees that it lacks subject matter jurisdiction under the LMRA, and will grant the Defendants' motion.

*BACKGROUND*[1]

I.    *The Parties' Work Structure and Relationship*

All seven Plaintiffs are pediatricians specializing in neonatology, and are employed as professors in the Pediatrics Department of the State University of New York at Stony Brook's Medical School, located in Suffolk County. The State University of New York ("SUNY") is New York's public, state-operated higher education system, and includes the School of Medicine at Stony Brook ("Stony Brook"). For their work as Stony Brook professors, Plaintiffs are paid an annual salary by the State. Pursuant to the terms of their employment, Plaintiffs are also required to participate in, and may earn additional income through, a private clinical pediatric practice.[2]

Defendant Stony Brook Children's Service, P.C. ("SBCS"), one of eighteen

---

[1] All of the facts contained herein are derived from the Complaint, unless otherwise noted.

[2] As explained in *Frontier Insurance Co. v. State*, 146 Misc.2d 237, 242-43 (N.Y. Ct. Cl. 1989):

> . . . in view of the income levels that a physician may attain in private practice, high caliber professionals cannot be recruited as full-time medical school faculty members under current salary scales. Therefore, it is the practice of most medical schools in this country to allow full-time medical faculty members to also maintain a private practice. In order to regulate the amount of time devoted to such practice (by limiting the total amount of professional income a faculty member may earn), it is generally the procedure to require faculty members to treat their private patients through . . . an arrangement between faculty members and their institutions or departments whereby private patients are accepted and treated within a type of group practice. These [arrangements] vary from institution to institution and, within any given institution, from department to department. . . . Generally, all such plans require that a percentage of such fees be paid to the institution or the department, and most plans place an overall or sliding scale cap on the doctor's income or some other type of limitation.

3

professional services corporations at Stony Brook, is organized under New York's Business Corporation Law, and is responsible for managing and distributing clinical practice income to all doctors within Stony Brook's Pediatrics Department (including the Plaintiffs). Defendant Stony Brook Clinical Practice Management Plan ("CPMP") is an unincorporated association of the eighteen professional services corporations at Stony Brook, and is responsible for billing, collecting, accounting for, and managing clinical practice income. Defendant Stony Brook Clinical Practice Management Plan Governing Board ("the Governing Board"), is an unincorporated association of doctors employed in Stony Brook's clinical practices, and is responsible for overseeing the distribution of clinical income in compliance with SUNY policies, for carrying out the directives contained within those policies, and for "day-to-day management of the CPMP." The parties refer collectively to SBCS, CPMP, and the Governing Board as the "CPMP Defendants."

Like Plaintiffs, Defendant Richard Fine is a physician and professor at Stony Brook; he also chairs its Pediatrics Department, is the Governing Board representative for SBCS, and is responsible for managing and distributing Plaintiffs' clinical practice income. Defendant Norman Edelman is Dean of the School of Medicine at Stony Brook, is a permanent member of the Governing Board, and shares fiduciary responsibility for overseeing appropriate distribution of Plaintiffs' clinical practice income in compliance with SUNY policies. Defendant Michael Porembski is senior administrator of the Pediatrics Department at Stony Brook, and shares fiduciary responsibility for collecting, managing, and distributing Plaintiffs' clinical practice income. The parties refer collectively to SUNY, Stony Brook, Fine, Edleman, and Porembski as the "State Defendants."

Defendant United University Professions ("the Union") is a labor organization that represents thousands of SUNY faculty members, and has been the exclusive bargaining representative regarding all terms and conditions of employment for all employees within the "State University Professional Services Negotiating Unit," including Plaintiffs. The Complaint states that New York is party to a collective bargaining agreement (CBA) with the Union, which, together with the "State University of New York Policies of the Board of Trustees" ("the Policies"), governs the Plaintiffs' salaries, wages, hours, and other terms and conditions of employment. The Policies state in part that "where there is in effect an agreement between the State and an employee organization . . . , the provisions of such agreement and the provisions of said Policies shall both be applicable."

The provisions contained within Article XVI of the Policies govern the management and distribution of the Plaintiffs' clinical practice income. Section 2 requires each SUNY School of Medicine to "develop and implement plans for the management of clinical practice income." Section 4(d) requires each SUNY School of Medicine to maintain a central system for recording the collection and disbursement of clinical practice income, and to provide each clinical plan member, at least once per year, with copies of annual audits of the amounts billed and collected. (At Stony Brook, this central system is administered through the CPMP and controlled by the Governing Board and Edelman.) Section 4(e) states that all clinical practices "shall be audited annually by independent auditing firms." Section 4(f) requires that, at least once per year, each SUNY School of Medicine must provide each clinical plan member with a written statement of his or her "maximum allowable compensation" for that year; that maximum should be "arrived at after

consultation with the employee," and should include his or her state salary and clinical income. Section 4(f) further states that this maximum "shall not be unreasonably fixed at less than 250 percent of [the] maximum state basic annual salary for the employee's rank," so long as the clinical practice income attributable to the employee permits it. Section 4(g) states that, generally, "no disbursements from clinical practice income for compensation of a plan member may be made where such income was not earned by the plan member."

The CBA also contains a mandatory grievance and arbitration provision, pursuant to which all claims for its breach must be resolved, and Article 29 of the CBA states that "the provisions of Article XVI of the Policies shall be subject to review in the grievance procedure." Appendix A-10 of the CBA incorporates Article XVI, and prohibits changes thereto without prior collective bargaining with the Union's representative.

II.  *The Plaintiffs' Allegations*

The Plaintiffs allege that the Defendants failed to develop a plan for the management of clinical practice income, in violation of Article XVI, Section 2 of the Policies; failed to develop and implement a central accounting and billing system for collection and disbursement of clinical practice income, in violation of Section 4(d); failed to submit the Plaintiffs' clinical practice income to annual independent audits, in violation of Section 4(e). The Plaintiffs further allege that in contravention of Section 4(f), they were not provided with annual written statements setting forth, nor consulted annually regarding, their maximum allowable compensation for the year. Rather, the Plaintiffs allege that the Defendants unilaterally determined their maximum compensation, "unreasonably fixed [their maximums] at less than 250% of the maximum annual

6

State-funded salary for their respective academic rank in any given year," and in doing so, failed to consider the amount of clinical practice income "attributable or likely to be attributable to each employee." This, state the Plaintiffs, deprived them of "substantial earned clinical practice income to which they were entitled." Moreover, the Plaintiffs allege that the Defendants "improperly disbursed clinical practice income in violation of [Section 4(g)] . . . [through] payments to other members of the Department of Pediatrics in the form of 'clinical income' and bonuses," and by "authoriz[ing] the use of clinical practice income generated by Plaintiffs to pay for numerous other items including travel, salaries of ancillary personnel, various department expenditures, as well as for periodic 'bonuses' that they paid to themselves."

The Plaintiffs allege that when they expressed concerns regarding the above allegations to the individual Defendants, they were ignored, misled, or told in essence "we'll get back to you." The Plaintiffs then "met with UUP representatives seeking Union guidance in pursuing grievances over the aforementioned issues." The Plaintiffs subsequently submitted a grievance charging that they had been "subjected to a plan for the management of clinical practice income that is inconsistent with [Article XVI of the Policies]." According to the Complaint, while the Union initially "expressed its view that the grievance had merit and would be vigorously pursued," the Union's representative "appeared to lose enthusiasm for the grievance" following a private meeting with Stony Brook's labor attorney. The Union representative eventually "verbally informed Plaintiffs that she did not think the Union would be pursuing their grievance," although she did not provide them with a final decision in writing, as promised. The Plaintiffs state that their "attempts to pursue this continuing violation of the Policies through the grievance procedure of the CBA have been, and

7

continue to be, futile.

The Plaintiffs further allege that (1) through the use of fraudulent billing and accounting practices, the Defendants "have engaged in a fraudulent scheme designed to conceal clinical practice income generated by Plaintiffs for the purpose of depriving Plaintiffs of substantial earned fees to which they were entitled"; and that (2) Defendants Fine and Porembski "wrongfully and knowingly kept the total compensation of the female Plaintiffs at a much lower level than their male counterparts with the same academic rank," and "have engaged in improper self-dealing and fraud."

*DISCUSSION*

I. *Dismissal: Legal Standards*

Where, as here, defendants move to dismiss a complaint pursuant to *both* Federal Rule of Civil Procedure 12(b)(1) (for lack of subject matter jurisdiction) *and* Federal Rule of Civil Procedure 12(b)(6) (for failure to state a claim upon which relief may be granted), the court should generally consider the Rule 12(b)(1) challenge first, since lack of subject matter jurisdiction moots all other possible defenses and objections. *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (citing 5 Wright & Miller, Federal Practice and Procedure, § 1350, at 548 (1969), and *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

Although the party invoking federal jurisdiction has the overall burden of proof on a 12(b)(1) motion, *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003) (citing *Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994), a federal court may dismiss a claim for lack of subject matter jurisdiction only if it appears that the plaintiff can prove no set of facts that

8

would support jurisdiction. *U.S. v. Sforza*, 326 F.3d 107, 110 (2d Cir. 2003).

II. *This Court Lacks Jurisdiction Over Plaintiffs' Sole Purported Federal Cause of Action.*

    A. *Overview: "hybrid" Section 301 claims.*

By their own admission, the Plaintiffs assert only one basis for federal jurisdiction: Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, which provides in relevant part that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

An employee normally must attempt to exhaust any grievance or arbitration remedies provided in a collective bargaining agreement before bringing suit against the employer for violating that agreement; but "when the union representing the employee in the grievance/arbitration procedure acts in such a . . . fashion as to breach its duty of fair representation . . . an employee may bring suit against *both* the employer *and* the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983) (emphases added). Such suits are generally known as "hybrid § 301/fair representation claims." *See id.* at 165. The Plaintiffs purport to bring precisely this sort of hybrid lawsuit.

Although an employee's hybrid cause of action under Section 301 "as a formal matter, comprises two causes of action," the two claims are "inextricably interdependent." *Id.* at 164-65. The hybrid plaintiff must prove *both*: (1) that the employer breached a collective bargaining agreement, *and* (2) that the union breached its duty of fair representation. *White v. White Rose*

9

*Food*, 237 F.3d 174, 178 (2d Cir. 2001). If the plaintiff is unable to prove *either* of his claims, the entire cause of action must fail. *See Arteaga v. Bevona*, 21 F. Supp.2d 198, 204 (E.D.N.Y. 1998).

The LMRA also states that "[t]he term 'employer' . . . shall not include . . . any State or political subdivision thereof," 29 U.S.C. § 152(2). "Political subdivisions" within the meaning of 29 U.S.C. § 152(2) are "entities that are either (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate." *NLRB v. Natural Gas Util. Dist. of Hawkins County*, 402 U.S. 600, 604-05 (1971). The Plaintiffs do not dispute that SUNY is a part or a political subdivision of New York State.

The LMRA also states that "[t]he term 'employee' . . . shall not include any individual employed . . . by any . . . person who is not an employer as herein defined," 29 U.S.C. § 152(3), and "labor organization" means an organization "in which *employees* participate and which exists for the purpose, in whole or in part, of dealing with *employers*." 29 U.S.C. § 152(5). Federal courts have thus held that public employees cannot sue their employers under the LMRA for breaching collective bargaining agreements, and also cannot bring hybrid Section 301 claims against their unions for breach of the duty of fair representation. *See Cunningham v. Local 30, Int'l Union of Operating Engineers*, 234 F. Supp.2d 383, 395 (S.D.N.Y. 2002) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990), and *Manfredi v. Hazleton City Auth.*, 793 F.2d 101 (3d Cir. 1986)).

B. *The Parties' arguments.*

The Defendants argue that the Union's duty to fairly represent the Plaintiffs arises out of the CBA, to which only the Plaintiffs, SUNY, and the Union are signatories. According to the Defendants, the Plaintiffs' employment by SUNY, as a subdivision of New York State, means that — at least as far as any disputes arising out of the CBA are concerned — they are not "employees" within the meaning of the LMRA. The Plaintiffs do not dispute that the CBA is formally signed only by the Plaintiffs, the Union, and SUNY — and not the CPMP Defendants.

The Plaintiffs argue, however, that Section 301 jurisdiction extends to breaches of *any* contract governing employment terms and conditions, or to *any* document referenced in such a contract (in this case, Article XVI of the SUNY Policies), *and* to any duty of fair representation arising under such a contract or document. The Plaintiffs assert that the CPMP Defendants are thus contractually bound by (and breached) Article XVI of the SUNY Policies to the same extent that the SUNY Defendants are bound by (and breached) the CBA itself; and that the thus Union had (and breached) the same duty to fairly represent the Plaintiffs in their grievances against the CPMP Defendants as in their grievances against the SUNY Defendants.

The Plaintiffs also argue that "this dispute is a private-sector labor dispute notwithstanding the involvement of the State in the joint employer relationship," because their claims arise out of the "private-sector component of [their] joint employment by private entities [— namely, the CPMP Defendants —] that cannot possibly constitute a 'State or political subdivision thereof.' " Pltf. Memo at 7. The Plaintiffs contend that "at a minimum, therefore, jurisdiction under Section 301 lies against the CPMP Defendants," and further, that "the Plaintiffs are employed in a joint private and state employment relationship that is not covered by the limited exception to the

11

LMRA's jurisdiction." Pltf. Memo at 11.

The Plaintiffs' argument, in essence, is that because the CBA governs all of the Defendants' behavior, and because the CPMP Defendants are private employers, the Plaintiffs' *entire* relationship with *all* of the Defendants falls within the private sector, unaffected by the "political subdivisions" exception to federal LMRA jurisdiction. The Plaintiffs thus assert that they may bring a hybrid Section 301 claim against *all* of the Defendants based on the Union's alleged breach of its CBA-imposed duty of fair representation vis-a-vis the CPMP Defendants. This argument is creative, but ultimately unpersuasive.

C. *Because the Union's fair representation duties arise out of Plaintiffs' SUNY employment, LMRA jurisdiction is improper.*

As suggested earlier, hybrid Section 301 suits do not lie against a union for breaching its duty of fair representation, if that duty arises out of a collective bargaining agreement with a public employer. *See*, *e.g.*, *Manfredi v. Hazleton City Auth., Water Dep't*, 793 F.2d 101, 102-04 (3d Cir. 1986). As one federal court has concluded, "where a political subdivision is a party to the CBA, [Section] 301(a) does not afford a basis for the exercise of federal jurisdiction." *Johnson v. Port of Seattle*, 261 F. Supp.2d 1243, 1245 (W.D. Wash. 2003) (citing *Ayres v. Int'l Bhd. of Elec. Workers*, 666 F.2d 441, 444 (9th Cir. 1982), and *Crilly v. Southeastern Pa. Transp. Auth.*, 529 F.2d 1355, 1362-63 (3rd Cir. 1976)).[3]

---

[3] The Plaintiffs base their jurisdictional argument on a group of decisions by New York's Court of Appeals and New York's Public Employment Relations Board (PERB): *N.Y. Pub. Library, Astor, Lenox and Tilden Founds. et al. v. N.Y. State Pub. Employment Relations Bd.*, 337 N.E.2d 136, 136 (1975); *In re United Univ. Professions (Edmund Egan)*, Case No. U-22037, 35 PERB ¶ 3019 (N.Y. Pub. Employment Relations Bd. June 12, 2002); *In re Serv. Employees' Int'l Union, et al.*, Case No. C-3552, 23 PERB ¶ 4035 (N.Y. Pub. Employment Relations Bd. July 19, 1990); and

The Complaint describes the Union as "a labor organization representing nearly 28,000 academic and professional faculty at 29 State-operated SUNY campuses," that "has been the exclusive bargaining representative . . . of employees employed in the State University Professional Services Negotiating Unit, including Plaintiffs." Complaint at ¶¶ 29-30. Thus, "*[a]s professors at Stony Brook*, Plaintiffs are employees in the State University Professional Services Negotiating Unit, and are represented by the Union." Complaint at ¶ 58 (emphasis added). And it is an "undeniable fact," add the Plaintiffs, that "Article XVI of the Policies is itself the product of collective bargaining negotiations *between the [Union] and the State of New York*, and is specifically incorporated into the CBA." Pltf. Memo at 18 (emphasis added).

Thus, it is immaterial whether the present dispute arises out of the Plaintiffs' *private* employment, and whether the CBA and Policies impose upon the Union a duty to fairly represent the Plaintiffs in this dispute. The CBA and Policies governing the Plaintiffs' clinical employment were entered into and enforced by the State. The Union's duties under the CBA and Policies are the product of its negotiations with the State, and thus, of its representation of the Plaintiffs as *public* employees. Since the LMRA does not confer federal jurisdiction on hybrid claims arising out a

---

*In re Jacob K. Javits Convention Ctr. of N.Y.*, Case No. U-8732, 20 PERB ¶ 3030 (N.Y. Pub. Employment Relations Bd. June 2, 1987).

Each of these cases imposes or upholds private employer status for joint public and private employers, *see In re United Univ. Professions (Edmund Egan)*, 35 PERB ¶ 3019, or employers having "in some respects the character of public employment and in other substantial respects [private]." *See N.Y. Pub. Library*, 337 N.E.2d at 136. As such, while New York state court and administrative agency decisions obviously do not control federal court interpretations of federal law, at first blush these cases seem to lend credence to the contention that the Plaintiffs' claims arise out of their private employment. However, the opinions cited by the Plaintiffs are inapposite in a key respect: they address improper labor practice claims against *employers* under New York's "Taylor Law," but *not* claims against unions for breach of the duty of fair representation.

union's representation of public employees, the Plaintiffs' sole purported federal cause of action fails.

III.  *The Court Declines Supplemental Jurisdiction over Plaintiffs' Remaining Claims.*

As this Court has dismissed the Plaintiffs' single purported federal claim, the only remaining issue is whether the exercise of pendant jurisdiction over their remaining state law claims is appropriate. It is not.

"[T]he exercise of pendent jurisdiction is generally a matter for the exercise of a district court's discretion." Generally however, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)). Given the early stage of the present case, and the fact that the sole federal cause of action has been eliminated from it, the exercise of federal supplemental jurisdiction is clearly unwarranted, and is accordingly declined.

*CONCLUSION*

For all of the above reasons, the Defendants' dismissal motion is GRANTED, and the Clerk of Court is directed to CLOSE this case.

**SO ORDERED.**

Dated:   Central Islip, New York            /s/
         September 9, 2005                   Denis R. Hurley
                                             United States District Judge