UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
STEPHEN BAUMGART, M.D.; JOSEPH D.
DECRISTOFARO, M.D.; MICHAEL A.
FRIEDMAN, M.D.; ALAN R. SPITZER, M.D.;        <u>MEMORANDUM AND ORDER</u>
SHANTHY SRIDHAR, M.D.; RITA P. VERMA,          03-CV-5526(DRH)(JO)
M.D.; and THOMAS E. WISWELL, M.D.,

                    Plaintiffs,

                   -against-

STONY BROOK CHILDREN'S SERVICE, P.C.;
STONY BROOK CLINICAL PRACTICE
MANAGEMENT PLAN; STATE UNIVERSITY OF NEW
YORK AT STONY BROOK SCHOOL OF MEDICINE;
STATE UNIVERSITY OF NEW YORK; UNITED
UNIVERSITY PROFESSIONS; STONY BROOK CPMP
GOVERNING BOARD; RICHARD N. FINE, M.D.;
NORMAN EDELMAN, M.D.; and MICHAEL A.
POREMBSKI,

                    Defendants.
---------------------------------------X
A P P E A R A N C E S:

Attorneys for Plaintiffs:
     Thompson Wigdor & Gilly LLP
     350 Fifth Avenue, Suite 5720
     New York, New York 10118
        By: Douglas H. Wigdor, Esq.
            Kenneth P. Thompson, Esq.
            Scott Browning Gilly, Esq.


Attorney for Defendants State University of New York
at Stony Brook School of Medicine, State University of
New York, Richard N. Fine, M.D., Norman Edelman, M.D.,
and Michael A. Porembski:
     Eliot Spitzer
     Attorney General of the State of New York
     300 Motor Parkway, Suite 205
     Hauppauge, New York 11788
        By: Susan M. Connolly, Esq.


Attorney for Defendant United University Professions:
     James R. Sander, Esq.
     52 Broadway, Ninth Floor
     New York, New York 11788
        By: Katherine A. Levine, Esq.

Attorneys for Defendants Stony Brook Clinical Practice
Management Plan, Clinical Practice Management Plan
Governing Board and Stony Brook Children's Services, P.C.
    Garfunkel Wild & Travis, P.C.:
    111 Great Neck Road
    Great Neck, New York 11021
       By: Leonard M. Rosenberg, Esq.
           Jordan M. Freundlich, Esq.

HURLEY, District Judge

        The Court dismissed the present case for lack of

subject matter jurisdiction in a Memorandum and Order dated

September 9, 2005 (the "September 9, 2005 Order").[1]  Pursuant to

Local Civil Rule 6.3 of the United States District Court for the

Eastern District of New York, plaintiffs move for reconsideration

of that decision.  Defendants oppose the motion.  Upon re-reading

the parties' original motion papers, and consideration of the

papers submitted as to the current motion, plaintiffs' motion is

denied for the reasons indicated <u>infra</u>.  However, given the

importance of the core issues in this case which have not

previously been directly addressed in a reported federal

decision, coupled with the provocative, albeit unavailing

arguments crafted by plaintiffs, the Court will review, and more

expansively explain its earlier holding.

COURT'S DECISION OF SEPTEMBER 9, 2005

        The facts, including the nature of plaintiffs'

---

        [1]  The Court assumes familiarity with the September 9, 2005
decision for the purposes of this order.

complaint, the identity and relationship between and among the parties, as well as the more significant legal arguments advanced by respective counsel, are recited in the Court's earlier decision. However, to place the present motion in context, the following partial synopsis of that decision is provided:

1.   The first, and sole federal cause of action
     in plaintiffs' multi-claim complaint is based
     on Section 301(a) of the Labor Management
     Relations Act ("LMRA"), 29 U.S.C. § 185,
     which provides in pertinent part that
     "[s]uits for violation of contracts between
     an employer and a labor organization . . .
     may be brought in any district court of
     United States having jurisdiction of the
     parties, without respect to the amount in
     controversy or without regard to the
     citizenship of the parties";[2]

2.   Under that cause of action, plaintiffs allege
     (a) that the State University of New York and
     the State University of New York at Stony

_____

[2]   The second, third, and fourth causes of action in the Complaint assert state-based breach of contract, fraud, and the New York Labor Law claims against the State and CPMP defendants, while the fifth and final claim charges all defendants — including United University Professions — with being members of a civil conspiracy.

Brook School of Medicine ("State" or "State
defendants"), as well as the non-State
defendants, breached the collective
bargaining agreement ("CBA") that the State
had with defendant United University
Professions ("Union" or "UUP") regarding the
management and distribution of clinical
practice income to the physician-plaintiffs,
and (b) that the Union breached its duty of
fair representation via its failure to pursue
plaintiffs' grievance challenging defendants'
violations of the CBA;

3.     None of the non-State defendants, viz., Stony
Brook Children's Services, P.C. ("Children's
Services, P.C."), Stony Brook Clinical
Practice Management Plan ("Stony Brook
CPMP"), and the Stony Brook CPMP Governing
Board ("Governing Board")(collectively "CPMP"
or "CPMP defendants"), is a signatory or a
party to the CBA;

4.     Moreover, neither of the State defendants
falls within the definition of an "employer"
under the LMRA, 29 U.S.C. § 152(2), nor are
the plaintiffs "employees" or UUP a "labor

organization" under the Act's definitions.

Id. § (3), (5);

5.  As explained in the Court's September 9th Order:

> The Complaint describes the Union as "a labor organization representing nearly 28,000 academic and professional faculty at 29 State-operated SUNY campuses," that "has been the exclusive bargaining representative . . . of employees employed in the State University Professional Services Negotiating Unit, including Plaintiffs."  Complaint at ¶¶ 29-30.  Thus, "[a]s professors at Stony Brook, Plaintiffs are employees in the State University Professional Services Negotiating Unit, and are represented by the Union."  Complaint at ¶ 58 (emphasis added).  And it is an "undeniable fact," add the Plaintiffs, that "Article XVI of the Policies is itself the product of collective bargaining negotiations between the [Union] and the State of New York, and is specifically incorporated into the CBA."  Pls.' Mem at 18 (emphases added).

(Sept. 9, 2005 Order at 13.)

6.  Based primarily on the foregoing, the Court held:

> Thus, it is immaterial whether the present dispute arises out of the Plaintiffs' private employment, and whether the CBA and Policies impose upon the Union a duty to fairly represent the Plaintiffs in this dispute.  The CBA and Policies governing the Plaintiffs' clinical employment were entered into and enforced by the State.  The Union's duties under the CBA and Policies are the product of its negotiations with the State, and thus, of its representation of the Plaintiffs as public employees.  Since the LMRA does not confer federal jurisdiction on hybrid claims arising out [of] a Union's representation of public employees, the

-5-

> Plaintiffs' sole purported federal cause of
> action fails.

(<u>Id.</u> at 13-14.)

<u>APPLICABLE LAW RE RECONSIDERATION MOTION</u>

Plaintiffs' motion is submitted pursuant to Local Civil Rule 6.3.  In order to succeed on a motion for reconsideration, the movant must show that "the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion."  Local Civil Rule 6.3.  "The standard for granting a motion for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked, in other words, matters that might reasonably be expected to alter the conclusion reached by the court.'"  <u>L.I. Head Start Child Dev. Servs., Inc. v. Kearse</u>, 96 F. Supp. 2d 209, 211 (E.D.N.Y. 2000) (quoting <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 256-57 (2d Cir. 1995)).  Neither "arguments already briefed, considered and decided" nor "new facts, issues or arguments not previously presented" provide legitimate grounds for the motion.  <u>Schonberger v. Serchuk</u>, 742 F. Supp. 108, 119 (S.D.N.Y. 1990) (citations omitted).

Applying these standards to the instant application, it is clear that plaintiffs have failed to establish a ground for reconsideration.  Simply put, absent from plaintiffs' motion are citations to controlling law or factual matters that the Court

overlooked which might reasonably be expected to alter the
outcome of the September 9th Order.

PLAINTIFFS' POSITION

In seeking reconsideration, plaintiffs argue:

> [T]he Court misconstrued relevant authority
> as well as overlooked important facts that
> were addressed in Plaintiffs' Brief in
> concluding that Defendant United University
> Professions (the "Union") represents
> Plaintiffs only as _public_ employees, despite
> the fact that this case arises out of
> collectively bargained terms and conditions
> that govern their _private_ clinical work with
> the CPMP Defendants, an undisputed _private_
> employer.
>
> Specifically, Plaintiffs submit that the
> Court overlooked (I) the factual and legal
> significance of the joint employer
> relationship between the CPMP Defendants and
> the State Defendants, (ii) the CPMP
> Defendants' obligation to adhere to specific
> provisions of the Collective Bargaining
> Agreement ("CBA"), including, but not limited
> to, the Policies, and (iii) the Union's duty
> to administer and enforce the Policies
> through the grievance arbitration provision
> of the CBA in connection with Plaintiff[s']
> private employment with the CPMP Defendants,
> as distinct from its separate duty of fair
> representation in the negotiation of the CBA.
> Rather, the Court summarily concluded,
> without citation to any legal authority, that
> it lacks subject matter jurisdiction over
> Plaintiffs' claims under the LMRA solely
> because the CBA and Policies were _negotiated_
> between the Union and the State.  Order at
> 13-14.  Not only did the Court base its
> decision to dismiss the Complaint on grounds
> that were not briefed by any party in the
> underlying motions, but we respectfully
> submit that the Court's conclusion is
> contrary to established law and disregards
> the factual realities of this case.

Moreover, it is respectfully submitted that the Court misapplied <u>Johnson v. Port of Seattle</u>, 261 F. Supp. 2d 1243 (W.D. Wash. 2003), when it concluded that Section 301 of the LMRA does not afford a basis for jurisdiction simply because a political subdivision is a party to the CBA.

Finally, the Court's expansion of the exclusion of a "State or political subdivision thereof" from the definition of "Employer" under the LMRA effectively precludes Plaintiffs from seeking relief in any forum against the Union for the violation of its fair representation duties in the enforcement of the Policies through the grievance arbitration provision of the CBA. Because the CBA explicitly states that the Policies, as applied to Plaintiffs' private clinical employment, must be enforced through the grievance arbitration provision, the Union is bound by the duty of fair representation in fulfilling this obligation.

(Pls.' Mem. in Supp. of Mot. for Recons. at 1-3.)

## DEFENDANTS' POSITION RE OPPOSING RECONSIDERATION MOTION

The various defendants submitted three different oppositions, all arguing, inter alia, that plaintiffs have proffered nothing to require reconsideration and are simply trying to relitigate issues already decided by the Court.

## FORMAT FOR REMAINDER OF DECISION

Each of the plaintiffs' reconsideration arguments will be addressed, beginning with the threshold issue of whether "the Court base[d] its decision to dismiss the Complaint on grounds that were not briefed by any party in the underlying motions." (<u>Id.</u> at 2.)

DISCUSSION OF GROUNDS ASSERTED
BY PLAINTIFFS IN SEEKING RECONSIDERATION

1.  Court's Order of September 9, 2005 Purportedly Based on
    Grounds not Advanced by any of the Parties

It is well-established that "[t]he federal courts are
under an independent obligation to examine their own
jurisdiction." FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231
(1990).  Nevertheless, unless it is patently clear that the court
lacks subject matter jurisdiction, it is inappropriate for a
district court to dismiss without affording a plaintiff notice
and an opportunity to be heard.  See Snider v. Melindez, 199 F.3d
108, 112-13 (2d Cir. 1999).  Dismissal in such a summary fashion
may be, "by itself, grounds for reversal."  Id. at 113 (quoting
Square D Co. v. Niagara Frontier Tariff Bureau, Inc., 760 F.2d
1347, 1365 (2d Cir. 1985) (Friendly, J.)).  Thus, if plaintiffs
are correct that the complaint was dismissed independently of any
ground advanced by a party, the Court would certainly reconsider
its decision on that basis alone.  For that reason, that argument
will be addressed initially.

As noted, plaintiffs argue that the Court's dismissal
of their LMRA claim was "solely because the CBA and Policies were
negotiated between the Union and the State."  (Pls.' Mem. in
Supp. of Mot. for Recons. at 2 (emphasis added to "solely").)
Presumably then, that is the ground that the Court is said to
have interjected sua sponte into the subject matter

jurisdictional analysis.  If so, plaintiffs' focus on the Court's comments as to which parties negotiated the CBA has seemingly produced an overly restrictive perception of the September 9th decision.

The word "negotiated" in the September 9th decision should be read in context.  The message intended to be conveyed was not simply that the Union and State "negotiated" the CBA, but also, inter alia, that they were the only parties to the agreement.  And that thought, rather than being created by the Court, was central to both UUP's and CPMP's motions to dismiss the complaint.  (See, e.g., UUP's Mem. Law in Supp. of Mot. to Dismiss Compl. at 2 ("The collective bargaining agreement . . . which is alleged to have been breached in this action is solely between the State of New York and the UUP."); id. at 21 ("[T]he case law is . . . clear that section 301 does not confer jurisdiction over a breach of contract claim between a non-signatory or non-party to the underlying collective bargaining agreement."); see also CPMP Defs.' Mem. Law in Supp. of Mot. to Dismiss, Table of Contents, Point 1, (C) and (D); id. at 12 ("Federal jurisdiction over the CPMP defendants is also improper because the CPMP Defendants are not parties to the CBA."); id. at 13 ("The courts have consistently held that, where there is no contractual relationship between the parties, Section 301 does not confer jurisdiction. . . .  Since the CPMP Defendants are not

parties to the CBA, dismissal for lack of subject matter jurisdiction is warranted."); and Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 7-8 (plaintiffs, in synopsizing the arguments advanced by defendants, note that "the CPMP Defendants also argue . . . that they are not a signatory party to the CBA and cannot be liable for its breach").)

In sum, the Court did not dismiss plaintiffs' LMRA claim "<u>solely</u> because CBA and Policies were <u>negotiated</u> between the Union and the State." (Pls.' Mem. in Supp. of Mot. for Recons. at 2 (emphasis added to "solely").) Rather, while the identity of the parties to the CBA was an essential part of the Court's analysis, the related and primary basis for the September 9th holding was that UUP represented plaintiffs solely "as public employees" and, as such, is immune from a hybrid Section 301 LMRA suit. (Sept. 9, 2005 Order at 13.) And, in any event, plaintiffs' assertion that the Court sua sponte attached significance to which parties negotiated and entered into the CBA is erroneous.

Notwithstanding plaintiffs' use of the word "solely" in incorrectly describing the basis of the September 9th decision, it may be that their real complaint lies elsewhere or, at least, includes another ground, viz. the Court's conclusion that UUP's fair representation duties arise out of plaintiffs' status as public employees thus precluding the current federal claim.

Perhaps that is the portion of the Court's decision which plaintiffs proffer was manufactured out-of-wholecloth. If so, such clearly is not the case. (See UUP Mem. in Supp. Mot. to Dismiss at 17-18 ("The UUP is only authorized, pursuant to its certification by PERB [the Public Employee Relations Board], to be the exclusive bargaining representative of employees serving in positions in the State University Professional Services Negotiating Unit and its duty of fair representation only runs to state employees covered by the collective bargaining agreement negotiated with the State."); id. at 25 ("[T]he UUP's authority to assist its members, when they work as clinicians, is limited to ensuring that the procedural parameters and protections set forth in Article XVI governing the clinical practice plans are being enforced by the State."); cf. Pls.' Mem. in Opp'n to Mot. to Dismiss at 28-29 ("In a confused and self-contradictory argument, the Union claims that the fact that Plaintiffs' fair representation claim arises from their private-section employment as clinical practitioners somehow divests this Court of jurisdiction under the LMRA.").)

To partially reiterate, plaintiffs, notwithstanding protestations to the contrary, had notice and in fact addressed the very arguments upon which this Court based its decision dismissing the LMRA claim. Accordingly, the request for reconsideration predicated on that threshold procedural ground is

denied as being devoid of merit.

Attention will now be directed to the substantive claims advanced by plaintiffs in support of the relief requested.

2.  Plaintiffs' Arguments Concerning the Joint Employer Relationship Between the State and the CPMP Defendants, and the Union's Corresponding Fair Representation Duties Vis-a-Vis Plaintiffs

    a)  <u>Issues of First Impression</u>

At the outset, it warrants mention that absent from plaintiffs' original submissions in opposition to the Rule 12(b)(1) applications to dismiss their complaint, as well from their papers in support of the present motion for reconsideration, is any authority for the proposition advanced by them that a state may lose its statutory exemption from suit under the LMRA based on the activities of a non-signatory, non-party to a collective bargaining agreement.  Similarly, no authority has been furnished for the proposition, also advanced by plaintiffs, that a private employer, which is the label plaintiffs attach to CPMP, may legitimately be sued under the LMRA, where it neither signed the CBA nor is a party to that agreement, <u>and</u> the entity with which it is said to share a joint employment relationship (here, the State), is statutorily exempt from such a suit.

To prevail against the State and CPMP defendants, the issues implicated in each of the above propositions must be resolved in plaintiffs' favor.

Plaintiffs explain the absence of precedent thusly:

> This case presents unusual factual circumstances and unique legal issues that have not been addressed by any court in the Second Circuit or by the United States Supreme Court. There simply is no <u>controlling</u> authority [or, based on the submissions of counsel and the Court's own research, apparently any other federal decisions] resolving [the subject issues].

(Pls.' Reply Mem. in Supp. of Mot. for Recons. at 5; <u>but see</u> parenthetically, Pls.' Mem. in Supp. of Mot. for Recons. at 14 (plaintiffs opine that the September 9th order was "contrary to more than 50 years of established case law").)

  b) Juxtapositioning of Plaintiffs' Joint
     Employer Argument With Basis for Court's
     September 9, 2005 Order

Pivotal to plaintiffs' position is that the State and CPMP defendants are plaintiffs' joint employers. It is alleged in the complaint, (Compl. ¶¶ 36, 52-54), and reiterated in plaintiffs' memorandum in opposition to defendants' motion to dismiss, that "the relationship between the State Defendants and the CPMP Defendants unequivocally constitutes a joint employment relationship between public and private entities." (Pls.' Mem. in Opp'n to Mot. to Dismiss at 13.) And plaintiffs correctly underscore that to the extent defendants take issue with that assertion, this Court has the authority to resolve the factual dispute in determining the jurisdictional issue. <u>International Longshoremen's Ass'n, AFL-CIO v. Delta S.S. Lines, Inc.</u>, 832 F.2d

-14-

759, 763 (2d Cir. 1987)("Whether Delta exercised sufficient supervision and control over its independent stevedores' employees to qualify as a joint employer 'is essentially a factual issue.'").  Indeed, the Court would be obligated to do so if its decision depended on the relationship between the State and CPMP defendants vis-a-vis plaintiffs.  But such is not the case.  (Sept. 9, 2005 Order at 13-14.)

As explained in the September 9th Order, plaintiffs, to prevail on their hybrid Section 301 claim, "must prove <u>both</u>: (1) that the employer breached a collective bargaining agreement, <u>and</u> (2) that the union breached its duty of fair representation." (<u>Id.</u> at 9.)  Obviously, unless both prongs are satisfied, the cause of action necessarily fails.  But here there is an added wrinkle: viz., even if, arguendo, CPMP can be deemed a joint employer with the State and thus arguably answerable in some forum for a breach of the CBA, can that action be based on the LMRA given that both the State and UUP are statutorily exempt from such a suit.

Plaintiffs' joint employer argument implicates the "employer" part of the hybrid equation and virtually ignores UUP's status.  Yet the linchpin of the Court's September 9th decision concerns the relationship between the UUP and plaintiffs.  If it is clear as a matter of law from the materials submitted that UUP represents plaintiffs solely as public

-15-

employees, then UUP is, as stated in the earlier decision and more expansively explained herein, immune from the current Section 301 suit.  29 U.S.C. § 152(2), (3), (5).

        c) <u>UUP Represents Solely Public Employees</u>

     It is clear that UUP is a public employee union.  <u>See, e.g.</u>, <u>United Univ. Professions, Inc. v. Newman</u>, 437 N.Y.S.2d 790 (3d Dep't 1981)("Petitioner, the [UUP], is a public employee organization certified under the Taylor Law as the exclusive representative of a collective negotiating unit encompassing professional services employees in the State University system."); http://www.uupinfo.org/membership/welcome.html ("To be eligible to join, one must be an employee of the State University of New York"); July 22, 2004 Decl. of Katherine A. Levine, Esq., in Supp. of UUP's Mot. to Dismiss ¶ 3 ("The UUP is a public sector labor union that has been duly certified by the New York State Public Employment Relations Board ("PERB") as the exclusive bargaining representative for collective negotiations on behalf of employees serving in positions in the State University Professional Services Negotiating Unit.")); Sept. 9, 2005 Order at 13 ("The Complaint describes the Union as 'a labor organization representing nearly 28,000 academic and professional faculty at 29 State-operated SUNY campuses,' that 'has been the exclusive bargaining representative . . . of employees employed in the State University Professional Services Negotiating Unit,

including Plaintiffs'") (quoting Compl. ¶¶ 29-30). As such, UUP does not negotiate for, or otherwise represent non-public employees. Its representation of plaintiffs is grounded on their status "[a]s professors at Stony Brook." (Compl. ¶ 58; <u>see also</u> Sept. 9, 2005 Order at 13.)

> d) Employment Status of Plaintiffs With CPMP
>    Does not Affect UUP's Statutory Immunity, as a
>    <u>Public Employees Union, From a LMRA Suit</u>

Plaintiffs' status does not neatly fit within the public employee/non-public employee dichotomy drawn above. Each claims to have a dual status, viz. as a public employee of the State and a non-public, or private employee of CPMP. From that, does it follow, as urged by plaintiffs, that this Court has jurisdiction to entertain the current LMRA suit?

Plaintiffs maintain that that question should be answered in the affirmative, proffering:

> Because they are joint employers of
> Plaintiffs and are contractually bound by the
> terms of Article XVI, the CPMP Defendants are
> liable for the breach of those terms in a
> Section 301 action notwithstanding that they
> are not formal parties to the CBA itself.
> The case authorities are in accord [citing
> <u>Newmark & Lewis, Inc., v. Local 814</u>, 776 F.
> Supp. 102 (E.D.N.Y. 1991); <u>Longstreet
> Assocs., L.P. v. Bevona</u>, 16 F. Supp. 2d 290
> (S.D.N.Y. 1998); <u>Bloomingdale's, Inc. v.
> SEIU, Loan 32e</u>, No. 97 Civ. 8169(SS), 1998 WL
> 229441, at *2 (S.D.N.Y. May 7, 1998)] . . .
> Thus, contrary to the CPMP Defendants'
> characterizations of the law, it is well
> established that Section 301 jurisdiction
> exists to enforce a collective bargaining
> agreement against non-parties who are bound

> by its terms despite not being formal
> signatories to the labor contract itself.

(Pls.' Mem. in Opp'n to Mot. to Dismiss at 25-26.)

Plaintiffs' argument, as stated in the September 9, 2005 Order, and now reiterated, is unconvincing. Its basic flaw is the improper conflation of two distinct issues, viz.: (1) which parties may be held to answer for a claimed CBA breach, and (2) where, i.e. in what jurisdiction, the suit may be commenced. Invocation of a joint employer theory implicates only the former. As a result, Newmark & Lewis, as well as the other decisions said to support plaintiffs' proposition that the "CPMP Defendants are liable . . . in a Section 301 action" (Pls.' Mem. in Opp'n to Mot. to Dismiss at 25-26), are inapposite; none of those cases involved either a public employees union, or a legislative enactment exempting a subject defendant from suit under the very statute invoked by the party claiming to be aggrieved. Simply put, Newmark & Lewis and like decisions concern the first of the two issues identified above, not the second which is the primary basis for the September 9, 2005 Order.

To partially reiterate, UUP represents plaintiffs solely as public employees. (Sept. 9, 2005 Order at 13-14.) Plaintiffs' invocation of the joint employer theory is insufficient to alter UUP's status from a public employees union to a public employees/private employees union based on

-18-

plaintiffs' dual employment.  Nothing proffered by plaintiffs by way of authority or logic suggests otherwise.  Indeed, if UUP endeavored to assume the expanded role urged by plaintiffs, it would be acting ultra vires.  See UUP's Constitution at http://www.uupinfo.org/constitution/constitution.html, particularly Article III, § 1 (a), (b), (c).

       (e)   Citation of <u>Johnson v. Port of Seattle</u> in
           September 9, 2005 Order

In the September 9th Order, the Court quoted <u>Johnson v. Port of Seattle</u>, 261 F. Supp. 2d 1243, 1245 (W.D. Wash. 2003), for the unremarkable proposition that "'where a political subdivision is a party to the CBA, [Section] 301(a) does not afford a basis for the exercise of federal jurisdiction.'"[3] (Sept. 9, 2005 Order at 12.)  That is the sole reference in the earlier opinion to <u>Johnson</u>.  Accordingly, the Court admits to being initially nonplused to discover that its verbatim excerpt from the case was, in plaintiffs' view, a "misapplication" of the decision.  (Pls.' Reply Mem. in Supp. of Mot. for Recons. at 6 n.3.)

---

[3]  "Unremarkable" in the sense that, inter alia, it comports with the LMRA definition of "employer" set forth in 29 U.S.C. § 152(2).  See <u>Cunningham v. Local 30, International Union Operating Engineers</u>, 234 F. Supp. 2d 383, 395 (S.D.N.Y. 2002)("Courts have held that they lack subject matter jurisdiction over hybrid claims by public employees because a public employer is not an 'employer' within the meaning of the LMRA.").

Upon perusing plaintiffs' papers submitted in support of the present motion, the genesis of plaintiffs' concern became apparent. Common to both this Court's opinion and to <u>Johnson</u> is the use of variants of the word "negotiation." (<u>See</u> Sept. 9, 2005 Order at 13 ("negotiations") and <u>Johnson</u>, 261 F. Supp. 2d at 1244, 1245 ("negotiated"). From that happenstance, counsel surmised that this Court's decision is premised on a misreading of <u>Johnson</u>. (<u>See, e.g.</u>, Pls.' Mem. in Supp. of Mot. for Recons. at 5 ("[T]he Court summarily concluded that no agreement exists between a 'union' and an 'employer' under the LMRA solely because the CBA was negotiated between the Union and the public State defendants."); <u>id.</u> at 9 ("As the Court in <u>Johnson</u> made clear, the public or private status of the employer, and <u>not</u> the status of the party that negotiates or enters into the collective bargaining agreement, is the controlling factor in determining whether a federal court has jurisdiction over an employee's hybrid claim under § 301 of the LMRA.").)[4]

Notwithstanding plaintiffs' apparent belief to the

---

[4] If by this language plaintiffs mean to suggest that <u>Johnson</u> supports the proposition that it is irrelevant that CPMP is not a party to the CBA (nor even mentioned in that document), but that, instead, CPMP's status as a purported joint employer is what is germane, their position is incorrect. Although the Port of Seattle — a State entity — did not negotiate the contract with the Union, it, unlike CPMP, was a party to that agreement given that it "sign[ed a] 'Letter of Assent'" authorizing the entity which did negotiate the contract "to act as its agent." <u>Johnson</u>, 261 F. Supp. 2d at 1245.

contrary, <u>Johnson</u> played no role in this Court's decision of
September 9th beyond the single purpose referenced in the opinion
and described above. As explained <u>supra</u>, the Court's use of the
word "negotiations" was part of the process employed to identify
the parties to the contract and, in UUP's case, the persons
represented and in what capacity. Although the identity of the
entities who negotiated the contract may not be significant in
and of itself, the identity of the parties to the contract
obviously is, if for no other reason that the LMRA specifically
exempts political subdivisions (such as the State defendants) as
well as public employee unions (such as UUP) from its ambit.
Those circumstances, together with others stated in the original
decision and amplified herein, constitute the bases for the
Court's September 9th Order, not <u>Johnson</u>.

     (f)  UUP's Fair Representation Duties
            <u>Vis-a-Vis Plaintiffs</u>

Among the multiple arguments advanced by plaintiffs in
support of the relief requested is one which claims that the
Court's decision ignores UUP's duty to enforce the provisions of
the CBA, including Article XVI of the State University of New
York Policies which is incorporated by reference. As explained
by plaintiffs, "[b]ecause the CBA explicitly states that the
Policies, as applied to Plaintiffs' private clinical employment,
must be enforced through the grievance arbitration provision, the
Union is bound by the duty of fair representation in fulfilling

-21-

this obligation." (Pls.' Mem. in Supp. of Mot. for Recons. at 3.)

Article XVI places the <u>sole</u> responsibility to develop and implement a clinical practice income plan on the State defendants. Article XVI, <u>The State of New York Policies of the Trustees</u>, §§ 1, 2, 3. CPMP, on the other hand, is not mentioned in either the CBA or Article XVI.

If the defendants have breached the CBA by failing to ensure that plaintiffs' rights under Article XVI are honored, UUP may, consistent with its duty to provide fair representation, look to the State to remedy the perceived deficiencies in the system. The September 9th Order does not, contrary to the position urged by plaintiffs, interfere with that process.

(g)  <u>Purported Unavailability of Alternate Forum</u>

Though plaintiffs did not bring suit before PERB pursuant to the Taylor Law, plaintiffs nevertheless assert that the PERB <u>would</u> find that the joint-employer relationship in the present case is a "private relationship." The PERB's jurisdiction emanates from the Taylor Law, and "the Taylor Law applies only to employment which is unequivocally or substantially public." <u>New York Inst. for the Educ. of the Blind v. United Fed'n of Teachers' Comm. for the New York Inst. for the Educ. of the Blind</u>, 444 N.Y.S.2d 637, 645 (1st Dep't 1981)(citation omitted). Because the present case involved both

public and private employment, plaintiffs argue that the PERB would hold that it lacks jurisdiction under the Taylor Law. Accordingly, plaintiffs maintain, should this Court adhere to its initial determination, they will be "left without any forum in which to pursue their claims against the Union." (Pls.' Mem. in Supp. of Mot. for Recons. at 16.)

Of course, the purported absence of an alternative remedy is insufficient to confer federal jurisdiction. Presumably then, this argument is offered for a different purpose, viz. to suggest that the September 9th Order is necessarily flawed because otherwise persons in plaintiffs' position would be without judicial redress.

But even if, arguendo, that were the case, there is no guarantee that federal and state laws, taken together, will be coextensive with the needs of those claiming to have been wronged. If a gap in the joint legislative tapestry is believed to exist, recourse lies with the legislature, not the courts.

<u>CONCLUSION</u>

For the reasons indicated, plaintiffs' motion for reconsideration is denied.

SO ORDERED.

Dated: July 6, 2006
       Central Islip, New York


_____/s/_____
DENIS R. HURLEY, U.S.D.J.